**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| G & G MIDWAY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>SSP AMERICA, INC.,<br><br>Defendant. | Case No.: 1:26-cv-06437<br><br>Honorable John F. Kness |

**PLAINTIFF G & G MIDWAY, LLC'S**
**<u>RESPONSE IN OPPOSITION TO MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................ 1

LEGAL STANDARDS ........................................ 2

ADDITIONAL FACTUAL ALLEGATIONS ........................................ 4

ARGUMENT ........................................ 6

I. COUNT I – BREACH OF CONTRACT – STATES A COGNIZABLE CAUSE OF ACTION ........................................ 6

   A. G&G Has Or Can Allege A Condition Precedent To The Upfront Fee ........................................ 7

   B. G&G Has Or Can Allege SSP's Failure To Pay The License Fees ........................................ 7

   C. G&G Has Or Can Allege SSP's Failure To Provide The Requested Financial Information ........................................ 8

   D. G&G Has Or Can Allege SSP's Failure To Use G&G's Core Menu ........................................ 10

   E. G&G Has Or Can Allege SSP's Failure To Comply With The Standards Associated With The Gene & Georgetti's Restaurants ........................................ 11

   F. G&G Has Or Can Allege A Termination Of The License Agreement, Especially After The Two Amendments ........................................ 12

   G. G&G Has Or Can Allege A Breach Of SSP's Duty Of Good Faith And Fair Dealing As Part Of Its Breach Of The License Agreement ........................................ 13

II. COUNT II – UNJUST ENRICHMENT – PLED IN THE ALTERNATIVE, STATES A COGNIZABLE CAUSE OF ACTION ........................................ 14

III. COUNT III – FRAUDULENT MISREPRESENTATION – STATES A COGNIZABLE CAUSE OF ACTION ........................................ 15

IV. COUNT IV – FRAUDULENT INDUCEMENT – STATES A COGNIZABLE CAUSE OF ACTION ........................................ 17

V. COUNT V – FRAUD BY OMISSION – STATES A COGNIZABLE CAUSE OF ACTION ........................................ 19

VI. COUNT VI – CONVERSION – STATES A COGNIZABLE CAUSE OF ACTION ....................20

VII. COUNTS VII – VIOLATION OF THE DEFEND TRADE SECRETS ACT, VIII – VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, AND IX AND X – VIOLATION OF THE LANHAM ACT– STATE COGNIZABLE CAUSES OF ACTION ....................21

VIII. COUNT XI – SPECIFIC PERFORMANCE – STATES A COGNIZABLE CAUSE OF ACTION....................22

CONCLUSION....................23

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541 (7th Cir. 2003)................................10

*Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.*, 2016 WL 3443897 (N.D. Ill. June 23, 2016)..........................................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................2, 7

*Barker ex rel. U.S. v. Columbus Regional Healthcare System, Inc.*, 977 F.Supp.2d 1341 (M.D. Ga. 2013)..........................................................................................3

*Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010)....................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................2, 6, 10

*Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436 (7th Cir. 1992)..........................13

*Boim v. American Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021)..........................3

*Bors v. Duberstein*, 2004 WL 1588271 (N.D. Ill. July 15, 2004)...................................19

*Christopher v. Harbury*, 536 U.S. 403 (2002)..................................................................2

*Cobra Capital LLC v. Stover Indus., Inc.*, 2007 WL 844635 (N.D. Ill. Mar. 14, 2007)..........................................................................................18

*Concord Indus., Inc. v. Harvel Indus. Corp.*, 122 Ill.App.3d 845, 462 N.E.2d 1252 (1984)..........................................................................................18

*Das v. Tata Consultancy Servs. Ltd.*, 118 F.4th 903 (7th Cir. 2024)..............................19

*Doe v. Dilling*, 228 Ill.2d 324, 888 N.E.2d 24 (2008)....................................................18

*Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp.2d 761 (N.D. Ill. 2005)................14

*Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506 (7th Cir. 2011).......................10

*Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 451 F.Supp.3d 910 (S.D. Ill. 2020)..........................................................................................21

*Eckhardt v. Idea Factory, LLC,* 2021 IL App (1st) 210813, 193 N.E.3d 182..............13

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007)......................2

*Fed. Deposit Ins. Corp. v. Patel*, No. 19-CV-6917, 2020 WL 6681348 (N.D. Ill. Nov. 12, 2020)..........................................................................................20

*Five-Star AudioVisual, Inc. v. Unique Bus. Sys. Corp*, 769 F. Supp. 3d 840 ................................18

*Franconero v. UMG Recordings Inc.*, 2013 WL 11238481 (C.D. Cal. Sept. 23, 2013) ..........................................................................................................................8

*Gandhi v. Sitara Capital Management, LLC,* 721 F.3d 865 (7th Cir. 2013)................................23

*GCS Credit Union v. Am. United Life Ins. Co.*, 666 F.Supp.3d 774 (S.D. Ill. 2023) ..............................................................................................................................14

*Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873 (7th Cir. 2022) ..........................................6, 15

*Gove v. Sargento Foods, Inc.*, 860 Fed.Appx. 446 (7th Cir. 2021)..................................................3

*Gunn v. Cont'l Cas. Co.*, 622 F.Supp.3d 694 (N.D. Ill. 2022) ...................................................7, 17

*Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006)...........................................................................3

*Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill.App.3d 965, 926 N.E.2d 934 (2010).........................................................................................................................13

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2014 WL 7365872 (N.D. Ill. Dec. 23, 2014) ...........................................................................20

*Ivey v. Transunion Rental Screening Sols., Inc.*, 2022 IL 127903, 215 N.E.3d 871............................................................................................................................. 6-7

*Karri v. Garland*, 2023 WL 3378990 (7th Cir. 2023) .....................................................................3

*Kinney v. Dominick's Finer Foods, Inc.*, 780 F.Supp. 1178 (N.D. Ill. 1991)..............................2, 7

*LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840 (N.D. Ill. 2008).........................................................................................................................13

*Marcure v. Lynn,* 992 F.3d 625 (7th Cir. 2021)...............................................................................3

*McCleary v. Wells Fargo Securities, L.L.C.,* 2015 IL App (1st) 141287, 29 N.E.3d 1087 ...................................................................................................................13

*PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938 (N.D. Ill. 2011)................................17

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011) .....................................................................................................7, 8

*Razor v. Hyundai Motor Am.*, 222 Ill.2d 75, 854 N.E.2d 607 (2006)...........................................10

*Rocha v. Rudd*, 826 F.3d 905 (7th Cir. 2016)..................................................................................16

*Swanson v. Citibank*, N.A., 614 F.3d 400 (7th Cir. 2010)................................................................3

*TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625 (7th Cir. 2007) .................... 9-10

*Thompson v. Am. Airlines Grp., Inc.*, 128 F. Supp. 3d 1047 (N.D. Ill. 2015).................... 15, 18

*United States ex rel. Dustman v. Advocate Health & Hosps. Corp.*, 2023 WL 2799699 (C.D. Ill. Apr. 5, 2023) .................... 7-8

*United States ex rel. Sibley v. University of Chicago Medical Center*, 44 F.4th 646 (7th Cir. 2022).................... 1-2

*Wendorf v. Landers*, 755 F. Supp. 2d 972 (N.D. Ill. 2010) .................... 20-21

*Wei Quan v. Arcotech Uniexpat, Inc.*, 2018 Il App (1st) 180227, 122 N.E.3d 767.................... 21

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605 (7th Cir. 1995) .................... 2

*Wine & Canvas Dev. LLC v. Weisser*, 2013 WL 5965884 (S.D. Ind. Sept. 11, 2013) .................... 22

*Zic v. Italian Gov't Travel Off.*, 130 F. Supp. 2d 991 (N.D. Ill. 2001) .................... 19

*Zeikos Inc. v. Walgreen Co.*, 2023 WL 3947775 (N.D. Ill. June 12, 2023) .................... 7

**Statutes** **Page(s)**

15 U.S.C. § 1501, *et seq*.................... 22

**Other Authorities** **Page(s)**

Federal Rule of Civil Procedure 8 .................... 3, 6, 7, 10, 23

Federal Rule of Civil Procedure 8(a)(2) .................... 2

Federal Rule of Civil Procedure 8(d)(2) .................... 14

Federal Rule of Civil Procedure 9 .................... 3, 7, 8

Federal Rule of Civil Procedure 9(b).................... 16, 23

Federal Rule of Civil Procedure 12(b)(6) .................... 2, 7

Federal Rule of Civil Procedure 12(d).................... 1

Federal Rule of Civil Procedure 56 .................... 1

Federal Rule of Evidence 201.................... 1

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1296 (4th ed. July 2026 update)....................................................................................3

Wright & Miller, Federal Practice and Procedure § 1349................................................................3

## INTRODUCTION

Defendant's Motion to Dismiss in this *removed action* relies upon facts not plead in the Complaint, misstates those facts which are alleged, and relies on cases which do not apply Illinois law. As set forth below, the Complaint pleads causes of action cognizable under applicable Illinois and Federal law. Instead of recognizing that it ran Gene's Bistro poorly, in breach of Agreement ¶ 5.3 (Compl., Ex. A, Dkt. 16-1)[1] ("Licensor agrees that operation and maintenance of the Restaurant in a manner that is similar or better to the operation, condition and appearance of the [Gene & Georgetti's] Restaurant or similar restaurants will satisfy the obligations set forth in this Section"), and that its unpredicted October 21, 2025, notice of termination (Compl., Ex. D, Dkt. 2-2) led to this suit, SSP seeks to blame the party to whom it owed duties. Currently, there are questions that SSP has never addressed: Is it still intent on closing the Restaurant? Does it contend that its October 21, 2025, notice of termination is still in effect? Can it close the Restaurant without any further notice? Currently, SSP is operating Schrödinger's Restaurant – it is both open and closed (or closing on some unknown date).

SSP's page and a half introduction engages in mind reading and asserts facts that are not in the Complaint, nor for which it asks this Court to take judicial notice. To the extent that SSP is relying on these facts, it should have sought summary judgment pursuant to FRCP 12(d) and 56 (and the applicable Local Rules). Since it did not, this Court should ignore these "facts", which are mere argument by counsel. *United States ex rel. Sibley v. University of Chicago Medical*

[1] This suit was originally filed on May 18, 2026, in the Circuit Court of Cook County. On May 26, 2026, prior to being served, SSP filed its appearance and jury demand. On June 1, 2026, also prior to being served, SSP filed its Notice of Removal. G&G asks this Court to take judicial notice of the docket in the Circuit Court of Cook County. FRE 201. Thus, SSP's complaint in its footnote 1 that it was "never provided" with the Complaint's exhibits (which are all documents executed by SSP) is due solely to the fact that it removed this case prior to being served, and not, as is implied, due to some improper act by G&G. This spin is prevalent throughout the motion to dismiss.

*Center*, 44 F.4th 646, 662 (7th Cir. 2022) ("[A] ruling on a motion to dismiss considers only the pleadings and draws all reasonable inferences in the pleader's favor."); *Kinney v. Dominick's Finer Foods, Inc.*, 780 F.Supp. 1178, 1182 (N.D. Ill. 1991) ("All those facts will be disregarded, however. This court is not disregarding the facts because it finds them irrelevant. … The introduction, however, of additional facts in [defendant's] brief was improper in a Rule 12(b)(6) motion which is strictly a procedural device to test the sufficiency of the plaintiff's pleadings.").

**LEGAL STANDARDS**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002), presuming all well-pled facts to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (*quoting Twombly*, 550 U.S. at 555). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. All reasonable doubts and inferences are resolved in G&G's favor, take well-pleaded allegations to be true, viewing them in the light most favorable to the plaintiff, and accepting as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). "Dismissals on the pleadings 'should be granted sparingly and with caution to make certain that the plaintiff is not improperly denied a right to have his claim adjudicated on the

merits.' " *Boim v. American Muslims for Palestine*, 9 F.4th 545, 558-59 (7th Cir. 2021), *quoting* Wright & Miller, Federal Practice and Procedure § 1349. SSP bears the burden of showing an entitlement to dismissal. *Marcure v. Lynn,* 992 F.3d 625, 631 (7th Cir. 2021).

For FRCP 8, " 'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. … In other words the court will ask itself could these things have happened, not did they happen. For cases governed by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).[2] All that is required at this stage is "that [the] complaint contain facts sufficient to state a claim that is plausible on its face. … [Plaintiff] who has not yet had the benefit of discovery, did not need to allege every evidentiary element of [its] claims." *Gove v. Sargento Foods, Inc.*, 860 Fed.Appx. 446, 448 (7th Cir. 2021).

Rule 9 must be read in conjunction with FRCP 8. *Karri v. Garland*, 2023 WL 3378990, *2 (7th Cir. 2023) (explaining that pleadings must be "a short and plain statement of the case" even with Rule 9(b)'s heightened pleading requirements). "Rule 9(b) does not require a plaintiff to demonstrate that a representation was indeed false." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

In any event, should this Court find the pleadings deficient, G&G seeks leave to file an amended complaint to cure the pleading deficiencies. *See*, 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1296 (4th ed. July 2026 update) ("Courts infrequently dismiss for a failure to plead with sufficient particularity under Rule 9(b), at least

[2] "Finding the *Twombly/Iqbal* urge irresistible, many lawyers fail to appreciate the distinction between determining whether a claim for relief is 'plausibly stated,' the inquiry required by *Twombly/Iqbal*, and divining whether actual proof of that claim is 'improbable,' a feat impossible for a mere mortal, even a federal judge." *Barker ex rel. U.S. v. Columbus Regional Healthcare System, Inc.*, 977 F.Supp.2d 1341, 1346 (M.D. Ga. 2013).

not without providing an opportunity to replead. To impose such a drastic sanction for a pleading defect arguably is at odds with the liberal approach the federal rules as a whole take to the pleading phase of litigation and could lead to injustice. Consequently, Rule 9(b) motions often yield no more than litigation delays or slightly amended complaints, and plaintiffs may not be deterred by the rule from instituting an action on the basis of information that may prove to be insufficiently particular." Footnotes omitted.); and *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010)(Rule 12(b)(6) motion).

## ADDITIONAL FACTUAL ALLEGATIONS

In 2019, SSP sought out the owners of the Gene & Georgetti's restaurants to participate in SSP's bid for the restaurant concession at Midway Airport. Compl., Dkt. No. 2-2, ¶¶ 12-14. SSP believed (correctly) having as a concessionaire an airport restaurant associated with the Gene & Georgetti's restaurants (a woman owned business) would help its bid be selected. *Id*. ¶15. To ignore the Gene & Georgetti's restaurants as part of the parties' relationship is to ignore the entirety of why SSP approached the Gene & Georgetti's restaurants in the first place.

Plaintiff G&G Midway, LLC, is owned by the owner and manager of the Gene & Georgetti's restaurants. *Id*. ¶ 18. Logically, one cannot replicate the leisurely pace of an Italian steakhouse in an airport terminal setting. Thus, the concept of a bistro was used. *Id*. ¶¶ 21-22; Ex. A. The idea behind Gene's Bistro was to emulate the core dishes of the Gene & Georgetti's restaurants, Licensing Agreement § 5.5 (*Id*., Ex. A, Licensing Agreement, Dkt. 16-1, p. 6)[3], while maintaining the same high level of quality and service as at the two Gene & Georgetti's restaurants. *Id*., at § 5.3 ("[SSP] agrees that operation and maintenance of the [Gene's Bistro] Restaurant in a manner that is similar or better to the operation, condition and appearance of the [two Gene & Georgetti's restaurants] or similar restaurants will satisfy the obligations set forth in

[3] Complaint Exhibits A, B, and C are filed under seal at Dkt. 16.

this Section."); Compl., ¶ 35. In fact, the agreed-upon amount of the license fee percentage is dependent upon the continued operation of the Gene & Georgetti's restaurants. *Id*., § 3.3(6), p. 3. Thus, it is a reasonable inference, if not an explicit contractual requirement, that the Gene & Georgetti's restaurants (and its menu and quality) were involved in the operation of the Midway restaurant. *See* Compl., ¶¶16, 24 30 ("the Core Menu consisted of dishes and recipes of Gene & Georgetti."); License Agreement § 7.3, Ex. A, p. 7.3, p. 8.

Before the License Agreement was signed on December 2, 2019, SSP's Vice President Patrick Carroll and other SSP officers assured G&G it was looking for a long-term partner. Compl., Dkt. No. 2-2, ¶ 16. After the Covid pandemic struck, on October 23, 2020, the parties entered into a letter agreement. Compl, Ex. B, Letter Agreement. At that point, Gene's Bistro had not yet opened, but SSP agreed it would open Gene's Bistro on a test basis until January 21, 2021. *Id*., p. 1. Prior to the parties' entry into the Letter Agreement, SSP's Vice President Patrick Carroll assured G&G it was looking for a long-term partner and would pay all the fees abated in the Letter Agreement in the future. Compl., ¶ 43.

In January 2021, SSP desired to extend its test period. Compl., ¶ 47. SSP Vice President assured G&G that the parties were in a long-term relationship and that the abated fees would be paid in the future. Compl., ¶¶ 49, 51. The parties entered into the Letter Agreement Amendment, which extended the test period until May 9, 2021. Compl., ¶ 49, Ex. C.

After the test period ended on May 9, 2021, no further amendments were made. However, SSP did not operate Gene's Bistro as agreed. SSP deviated from the Core Menu, resulting in dishes of lower quality, refused to engage with G&G over the Core Menu, and threatened to terminate the License Agreement when G&G raised its concerns. Compl., ¶¶ 57-59. The Yelp and Google reviews give it consistently poor ratings for customer service and food

quality. Compl., ¶¶ 75-77. As a result, and due to SSP's acts and omissions, Gene's Bistro underperformed, and G&G was deprived of the royalties it would have received had SSP operated the restaurant with the menu, service, and quality to which it was contractually obligated. Compl., ¶¶ 75, 78. Despite its unsupported protestations in its motion, the simple fact is the G&G has alleged that any financial disappointment was due to SSP's operation of the restaurant and not the bistro concept. Further, SSP did not pay the Upfront Fee. Compl., ¶ 74.[4]

Instead of trying to live up to the terms of the License Agreement, Compl., ¶¶ 50-51, 53-59, 73-79, after use usefulness of having Gene & Georgetti's as one of its bid concessionaires had passed, and despite its officers' reassurances that SSP was looking for a long-term partner, SSP went to the next shiny object – Bally's. Compl. ¶¶ 65-70.[5]

## ARGUMENT

"The bar to survive a motion to dismiss is not high." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge [that] 'recovery is very remote and unlikely.' " *Twombly*, 550 U.S. at 556.

### I. COUNT I – BREACH OF CONTRACT – STATES A COGNIZABLE CAUSE OF ACTION

SSP's motion does not claim that the elements of a breach of contract were not plead as required under FRCP 8. Instead, it asserts that the allegations are untrue, missing, or insufficient. To state a cause of action for breach of contract under Illinois law, a plaintiff must plead "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental*

[4] If required, G&G can amend its complaint to allege that it sent, and SSP acknowledged receipt of, the invoice for the upfront fee in January 2022.

[5] If required, G&G can amend its complaint to allege that SSP proposed a Bally's sports bar concept for the same space to the Chicago Department of Aviation in or about May 2025.

*Screening Sols., Inc.*, 2022 IL 127903, ¶ 28, 215 N.E.3d 871, 877; *Gunn v. Cont'l Cas. Co.*, 622 F.Supp.3d 694, 703 (N.D. Ill. 2022). There is no heightened pleading standard for this count. FRCP 8, 9; *Zeikos Inc. v. Walgreen Co.*, 2023 WL 3947775, at *4 (N.D. Ill. June 12, 2023). G&G has or can plead all required elements.

**A. G&G Has Or Can Allege A Condition Precedent To The Upfront Fee**

Despite having the burden of proof, SSP cites no cases showing that the complaint is inadequate. The reasonable inference of SSP's failure to pay the upfront fee is that the invoice was provided. That is the standard. *Ashcroft*, 556 U.S. at 678. *See also* Compl., Dkt. No. 2-2, ¶ 82. In any event, as set forth in footnote 4, above, G&G can plead, if required, that it sent the invoice in January 2022. This is not a basis for dismissal.

**B. G&G Has Or Can Allege SSP's Failure To Pay The License Fees**

SSP's argument is based upon facts outside the complaint. In essence, it says that the complaint should be dismissed since it fully performed. That is not a proper FRCP 12(b)(6) motion. *Kinney*, 780 F.Supp. at 1182. Here, Complaint ¶¶ 53-56 and 73 affirmatively state that SSP failed to pay the fees due, failed to provide financial information despite G&G's "repeated" requests, and, based on SSP having sole access to the financial information, G&G cannot confirm, as allowed under the License Agreement, whether SSP's representations are true. G&G's suspicions arise from SSP's failure to provide the requested financial information and SSP's lack of engagement when G&G requested the financial information. Compl., ¶¶ 54-55.

SSP's reliance on *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011), is misplaced. There, in a fraud case, the Court discussed pleadings which were "based on secondhand information that [he] believes to be true" – pleadings in qui tam suits filed by others. *Id*. As noted above that is not the case. SSP merely asserts this with no analysis or thought. Similarly, *United States ex rel. Dustman v. Advocate*

*Health & Hosps. Corp.*, 2023 WL 2799699, at *5 (C.D. Ill. Apr. 5, 2023), is inapposite. That case also analyzed "information and belief" in the context of a fraud case, with its heightened pleading standard ("As a preliminary matter, it is necessary to discuss the extent to which allegations pled 'on information and belief' are adequate when pleading fraud. Circuits differ on this point, with Seventh Circuit courts frowning on the practice …."). Recall, this Count I is for breach of contract, which does not sound in fraud, and is not subject to FRCP 9's heightened pleading standard. Nothing in *Dustman* states that this Court can imply that certain allegations are based upon "information and belief" 2023 WL 2799699, at *5-6. SSP having sole access to the financial information is, however, an exception that allows alleging on information and belief in a fraud case. *Pirelli*, 631 F.3d at 442; *Dustman*, 2023 WL 2799699, at *5. *Franconero v. UMG Recordings Inc.*, 2013 WL 11238481, at *6 (C.D. Cal. Sept. 23, 2013), dealt with a pleading where there was a sole allegation made on "information and belief". That is simply not the case here. None of SSP's cases show dismissal is appropriate here.

### C. G&G Has Or Can Allege SSP's Failure To Provide The Requested Financial Information

SSP sets up a straw man by ignoring the paragraphs which set forth the basis for the allegations in the Complaint. Compl., Dkt. 2-2, ¶¶ 84(c)-(e). Again, ¶¶ 54-56, 59 and 83, *id*. at ¶¶ 54-56, 59, 83, affirmatively state that SSP failed to provide financial information despite G&G's "repeated" requests, failed to provide revenue information, and G&G "timely requested audited financial statements for Gene's Bistro's fiscal years 2024 and 2025." License Agreement § 3.2(a) provides that G&G will receive a certain percentage of "Net Revenue". (Compl. Ex A., Dkt. 16-1, Licensing Agreement, p. 2). Section 3.2(b) defines "Net Revenue". *Id*. Section 3.3 requires that "SSP shall furnish to Licensor reports with respect to all fees and adjustments as provided above." *Id*., p. 3. Section 3.4 requires SSP to provide G&G, "at SSP's sole cost and

expense, an audited statement of all sales (and Net Revenue) made at the Restaurant prepared by an independent accounting firm (the 'Audited Statement')" if requested within 90 days of the end of SSP's fiscal year. *Id.* SSP did not provide the timely requested audited financial statements. Compl., Dkt. 2-2, ¶ 83. Thus, it has adequately pled SSP's breach of the License Agreement by failing to provide the quarterly and annual financial information.

The Licensing Agreement's reporting obligations, read as a whole, imposed meaningful obligations on SSP to provide accurate and complete financial information to G&G to allow it to verify the accuracy of fee payments. The fact that reporting was based on SSP fiscal periods does not mean SSP had no obligation to provide accurate and complete reports –the reporting schedule was just tied to SSP's fiscal calendar. G&G's allegation that SSP failed to provide complete reports sufficient to verify fee accuracy states a plausible breach of the reporting provisions regardless of the precise reporting interval. As to the audit provision, G&G's allegation that SSP failed to maintain adequate financial records is independently actionable as a breach of SSP's record-keeping obligations, and the absence of records itself constitutes damages by depriving G&G of the ability to verify its fee entitlements. The damages from reporting failures are the underpayment of fees that G&G cannot calculate precisely because of those very failures.

As to damages, SSP's only case, *Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.*, 2016 WL 3443897 (N.D. Ill. June 23, 2016), was decided on motions for summary judgment, not a motion to dismiss. It does not discuss any pleading standard for a breach of contract. Under Illinois law, "when a party establishes that it is entitled to damages but fails to prove the amount of those damages to a reasonable degree of certainty, only nominal damages are recoverable at the discretion of the trial judge." *TAS Distrib. Co., Inc. v. Cummins Engine*

*Co., Inc.*, 491 F.3d 625, 632 (7th Cir. 2007). Moreover, under Illinois law, G&G is not required to prove damages to the exact cent; it must merely establish a reasonable basis for computing damage. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 518 (7th Cir. 2011), *citing Razor v. Hyundai Motor Am.*, 222 Ill.2d 75, 106-07, 854 N.E.2d 607, 626 (2006).

SSP also ignores that one of the remedies sought by G&G is an accounting. Dkt 2-2, p. 15. If, as SSP contends, there are no damages, then an accounting is an appropriate remedy since there is an inadequate remedy at law and, given SSP's sole access to the financial information, there is a need for discovery. *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003).

**D. G&G Has Or Can Allege SSP's Failure To Use G&G's Core Menu**

SSP's main complaint is, in essence, that the heightened fraud pleading standards were not met. It is seeking more detail than required by FRCP 8. *Twombly*, 550 U.S. at 555. License Agreement § 5.5 provides that the restaurant's Core Menu would be implemented with items which were chosen by G&G. These items could be changed subject to G&G's approval. Compl. Ex A, Dkt. 16-1, Licensing Agreement, p. 6. (Any change to the menu due to the Aiport's or City's requirements would be an outside fact, inapplicable to deciding this motion.) Section 7.3 requires G&G to "furnish reasonable ongoing guidance to SSP with respect to recipes, methods, specifications, standards and operating procedures relating to the Menu". *Id*., p. 7. The Letter Agreement allowed SSP "in its reasonable discretion" to make changes to the menu only during the test period. (Compl. Ex B, Dkt. 16-2, Letter Agreement, p. 1). Once the Test Period ended and the restaurant began full operations, SSP's contractual obligation to consult with and obtain G&G's approval for menu changes was restored.

The menu was developed with G&G's collaboration. Compl., Dkt. 2-2, ¶ 24. The Core Menu consisted of dishes and recipes of Gene & Georgetti's *Id*., ¶ 30. SSP did not implement the

Core Menu and threatened to terminate the License Agreement over G&G's complaints about the lack of Core Menu items. *Id.*, ¶¶ 57-58. SSP's failure to use the approved Core Menu contributed to the restaurant's poor performance. *Id.*, ¶ 75 ("… In fact, Defendant has failed to serve the Core Menu at all."). G&G's allegation that SSP deviated from the Core Menu and was resistant to G&G's menu proposals states a plausible breach of the menu consultation and approval provisions. The lack of specific factual detail about particular menu items is attributable to SSP's control over the restaurant's day-to-day operations and is a matter properly addressed through discovery. If not, G&G can plead additional facts to cure any deficiencies this Court may find.

### E. G&G Has Or Can Allege SSP's Failure To Comply With The Standards Associated With The Gene & Georgetti's Restaurants

G&G adequately pled facts showing that SSP did not live up to its "highest standards", or those of the Gene & Georgetti restaurants. The Google and Yelp reviews are, to be blunt, terrible Compl., Dkt. 2-2, ¶¶ 76-77. These reviews are not those of the Gene & Georgetti restaurants. They show that Gene's Bistro was run poorly, in breach of SSP's duties. If SSP is now admitting these reviews reflect "SSP's highest standards", then that may be the basis for additional claims. SSP agreed to be bound by these standards. License Agreement § 5.3, Compl. Ex A, Dkt. 16-1, Licensing Agreement, p. 6.

Worse, the last sentence of License Agreement § 5.3, *id.*, is clearly not a "safe harbor". Instead, it is a floor – the *minimum* standard by which SSP agreed to operate. The word "operation" does not appear in § 5.3 until the last sentence – and then twice. This sentence states that if, at a minimum, the restaurant is run the same or better than Gene and Georgetti's (or similar high-end restaurants), then SSP's "highest standard" obligation is met even if the SSP's "highest standard" imposes additional operational, maintenance, condition, and appearance requirements. Section 5.3 must be read as a whole, and the reference to Gene & Georgetti

restaurants in the last sentence reflects the parties' intent that the Gene's Bistro restaurant maintain standards consistent with the Gene & Georgetti brand that G&G was licensing. The License Agreement was specifically designed to trade on the Gene & Georgetti name and reputation, and it would be unreasonable to interpret the agreement as permitting SSP to operate the restaurant in a manner inconsistent with that brand's standards. G&G's allegation that SSP failed to maintain the restaurant consistent with Gene & Georgetti's standards is therefore a plausible allegation that SSP failed to meet its own highest standards as required by § 5.3.

### F. G&G Has Or Can Allege A Termination Of The License Agreement, Especially After The Two Amendments

While SSP correctly notes that § 9.5 conditions termination on actual closure of the restaurant, the issuance of the Notice of Termination, Compl., Dkt. 2-2, Ex. D, itself constituted a breach of the Licensing Agreement and the covenant of good faith and fair dealing by placing G&G in a state of uncertainty regarding the future of the relationship, disrupting G&G's ability to plan and operate its business, and signaling SSP's intent to pursue an alternative business opportunity at G&G's expense. Furthermore, SSP's continued operation of the restaurant under the Gene's Bistro name after issuing the Notice – while simultaneously pursuing an alternative business arrangement – constitutes a breach of SSP's obligations under the Licensing Agreement by using G&G's brand in a manner inconsistent with the parties' expectations. The fact that the restaurant did not ultimately close does not cure the harm caused by SSP's issuance of the Notice and its concurrent pursuit of alternative arrangements. As noted above, G&G does not know whether SSP claims its Notice is still effective or if it still intends to close the restaurant at some unidentified point in the future. These are inconsistent with the parties' expectations, as shown in I(G), below.

### G. G&G Has Or Can Allege A Breach Of SSP's Duty Of Good Faith And Fair Dealing As Part Of Its Breach Of The License Agreement

Finally, the duty of good faith and fair dealing is a basis for a breach of contract action. *LaSalle Bank Nat'l Assoc. v. Paramont Properties*, 588 F.Supp.2d 840, 853 (N.D. Ill. 2008). G&G adequately pled SSP's breach of its duty. "A covenant of good faith and fair dealing is implicit in every contract as a matter of law." *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill.App.3d 965, 978, 926 N.E.2d 934, 946 (2010); *LaSalle Bank Nat'l Assoc.*, 588 F.Supp.2d at 857. "The purpose of this duty 'is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.' " *Eckhardt v. Idea Factory, LLC,* 2021 IL App (1st) 210813, ¶ 28, 193 N.E.3d 182, 194, *quoting McCleary v. Wells Fargo Securities, L.L.C.,* 2015 IL App (1st) 141287, ¶ 19, 29 N.E.3d 1087, 1093.) "Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Eckhardt,* 2021 IL App (1st) 210813, ¶ 28, 193 N.E.3d at 194; *LaSalle Bank Nat'l Assoc.*, 588 F.Supp.2d at 857. A party who does not properly exercise contractual discretion breaches the implied covenant of good faith and fair dealing that is in every contract. *Id*. The duty "does require [SSP] to exercise the discretion afforded to it by the license agreement in a manner consistent with the reasonable expectations of the parties." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1445 (7th Cir. 1992). In short, SSP's right to terminate under § 9.5 does not immunize it from liability for exercising that right in bad faith, as alleged.

Throughout the course of their relationship, SSP affirmatively stated that it was looking

for a long-term partner. Its Senior Vice President Patrick Carrol said this to G&G before it executed the License Agreement. Compl., Dkt. 2-2, ¶ 16, 20. He said this before it executed the Letter Agreement. *Id*., ¶ 43. He said this before it executed the Second Letter Agreement. *Id*., ¶ 48. G&G believed and relied on these representations. Compl., ¶¶ 20, 44, 49. SSP's conduct involves precisely the type of deceit and dishonest purpose that the implied covenant prohibits. Its argument ignores SSP's multiple representations of a long-term relations upon which G&G relied. Furthermore, G&G suffered cognizable injury from the Notice: it was forced to prepare for the termination of its licensing relationship, and suffered reputational harm from the public uncertainty about the future of Gene's Bistro.

*GCS Credit Union v. Am. United Life Ins. Co.*, 666 F.Supp.3d 774, 786 (S.D. Ill. 2023), is inapposite, as it relies upon *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp.2d 761, 774 (N.D. Ill. 2005), which was decided under Massachusetts, not Illinois, law. None of SSP's cases involve a complaint which alleges multiple representations of a long-term relationship, and a breach of that promise and expectation. Any claim that the restaurant was performing poorly is clearly alleged to have been solely caused by SSP's mismanagement. Compl. ¶¶ 57-59, 75-77. Thus, its claim that it wants to close due to poor performance is also the type of deceit and dishonestly the duty prevents.

## II. COUNT II – UNJUST ENRICHMENT – PLED IN THE ALTERNATIVE, STATES A COGNIZABLE CAUSE OF ACTION

This Count is pled in the alternative to Count II, as permitted by FRCP 8(d)(2). Federal pleading rules expressly permit parties to plead alternative and inconsistent theories of recovery, and G&G's designation of Count II as pled in the alternative to Count I is sufficient to preserve the unjust enrichment claim at the pleading stage. G&G specifically described its unjust enrichment claim as "in the alternative," and purposefully omitted incorporation of prior

allegations.

At the motion to dismiss stage, courts should not force a plaintiff to elect between contract and quasi-contract theories before discovery has been completed. Furthermore, G&G's unjust enrichment claim encompasses benefits conferred on SSP that may fall outside the express terms of the Licensing Agreement, including the goodwill, reputation, and brand recognition associated with the Gene & Georgetti name that SSP exploited beyond the scope of the license. If the Court ultimately finds that the Licensing Agreement does not cover certain aspects of SSP's use of G&G's brand or intellectual property, the unjust enrichment claim provides an alternative basis for recovery. Dismissal at this stage would be premature. *Gociman*, 41 F.4th at 886 ("At the pleading stage, a party may plead breach of contract and unjust enrichment claims in the alternative."). Thus, SSP's argument is meritless.

## III. COUNT III – FRAUDULENT MISREPRESENTATION – STATES A COGNIZABLE CAUSE OF ACTION

G&G properly alleged its fraudulent misrepresentation claim, in which G&G must allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Thompson v. Am. Airlines Grp., Inc.*, 128 F.Supp.3d 1047, 1050 (N.D. Ill. 2015). G&G expressly alleged that SSP made several statements of material fact, including that SSP was looking to form "a long-term business relationship," that SSP "will fully pay the Upfront Fee and Licensing Fees," and that SSP will "permanently close Gene's Bistro on December 2, 2025." Compl., ¶¶ 16, 51, 61, 94. G&G further alleged that the SSP knew that the foregoing statements were false as Gene's Bistro continues to operate and SSP has yet to pay all fees. *Id.*, ¶¶ 73, 95. G&G further alleged that it reasonably and justifiably relied on SSP's false statements and that those statements were

made to induce G&G to act as SSP wanted. *Id.* ¶¶ 98-99. Specifically, G&G chose to partner with SSP based on SSP's repeated assurances of a long-term business relationship and agreed to enter into two abatement periods because SSP repeatedly stated it would pay all fees. *Id.*, ¶¶ 20-21, 44-53, Exs. B-C. Because of that reliance, G&G suffered damages. *Id.*, ¶ 101.

G&G complied with the requirements of FRCP 9(b).[6] A careful reading of the Complaint, however, shows otherwise. To comply with Rule 9(b), G&G must allege the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). Throughout the Complaint, G&G alleged the identity of the persons making the misrepresentations: "Patrick Caroll" and "Patrick Teague." G&G alleged that the contents of Caroll's misrepresentations included the long-term relationship and that SSP would pay all fees, while Teague's misrepresentation included the termination of the Licensing Agreement, as he signed the Termination Notice. Compl., ¶¶ 20, 43; Ex. D. The time, place, and method of Teague's misrepresentation are in the Termination Notice, as it is dated October 21, 2025, sent from Ashburn, Virginia, and delivered via email and overnight delivery. *Id.*, Ex. D. G&G likewise sufficiently alleged that Carroll's misrepresentations were verbal and in person, as he "told" G&G that they were in a long-standing relationship right before entering into the Letter Agreement on October 23, 2020. *Id.*, ¶¶ 42-45.

SSP further argues that G&G cannot show justifiable reliance on its false statements because the Licensing Agreement provides no express term provisions addressing the length of the relationship. However, SSP overlooks that this Court should take G&G's allegations as true,

---

[6] Instead of addressing each Count in part, SSP combined Counts III and IV (fraudulent misrepresentation and fraudulent inducement) and raised the same arguments for dismissing both Counts. Hence, G&G incorporates its rebuttals to SSP's arguments in its fraudulent misrepresentation claim to its fraudulent inducement claim, and vice versa.

which necessarily include G&G's expressed allegation that it reasonably and justifiably relied on SSP's false statements. Compl., ¶¶ 16, 43, 48, 98-99. SSP also overlooks that "justifiable reliance is a *question of fact* that is to be determined by the finder of fact[.]" *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 958 (N.D. Ill. 2011) (emphasis added). At this stage, SSP cannot possibly argue that no trier of fact can find that it was not reasonable for G&G to rely on SSP's false statements, especially considering SSP's repeated assurances of a long-term business relationship and the promise to pay all licensing fees, which were memorialized in writing, based on SSP's commitments of a long-term relationship. *See id.*, and Exs. B, C.

Finally, SSP argues that G&G cannot allege that SSP knew about its misrepresentations regarding the long-term commitment and that SSP made those misrepresentations to induce G&G to act. SSP simply argues that the "mere fact that SSP considered [another business] opportunity" is insufficient to allege knowledge or belief in falsity. In other words, in its motion, SSP argues about the *merits* of G&G's allegations. It is black-letter law that a FRCP 12(b)(6) motion tests only the "sufficiency of the complaint," and this Court is not only required to accept the allegations of the Complaint as true, but also to draw "all reasonable inferences in favor" of G&G. *Gunn v. Cont'l Cas. Co.*, 622 F.Supp.3d 694, 703 (N.D. Ill. 2022). G&G specifically alleged that SSP knew about the falsity of its misrepresentations regarding the long-term commitment. Compl., ¶¶ 73, 95. SSP's attempted termination of the Licensing Agreement within only a few years constitutes a reasonable inference that SSP knew about the falsity of that statement and that they were made to inducing G&G to enter into the Licensing Agreement.

## IV. COUNT IV – FRAUDULENT INDUCEMENT – STATES A COGNIZABLE CAUSE OF ACTION

G&G likewise properly alleged its fraudulent inducement claim for which G&G must allege: "(1) a false statement of material fact; (2) known or believed to be false by the person

making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Thompson v. Am. Airlines Group, Inc.*, 128 F.Supp.3d 1047, 1050 (N.D. Ill. 2015), *quoting Doe v. Dilling*, 228 Ill.2d 324, 342-43, 888 N.E.2d 24, 35-36 (2008). G&G alleged that SSP made several statements of material fact, including that SSP was looking to form "a long-term business relationship," that SSP "will fully pay the Upfront Fee and Licensing Fees," and that SSP will "permanently close Gene's Bistro." Compl., ¶¶ 16, 43, 48, 51, 61, 103-105. G&G further alleged that the SSP knew that the foregoing statements were false. *Id.*, ¶¶ 73, 105-106, 108. G&G likewise alleged that SSP's false statements were made to induce G&G to act by agreeing to enter the Licensing Agreement and execute the abetment periods. *Id.*, ¶¶ 20-21, 44-45, 48-49, 109. G&G lastly alleged that it reasonably and justifiably relied on those false statements as it executed the Licensing Agreement and the abetment periods. *Id.*, ¶ 110. Because of that reliance, G&G suffered damages. *Id.*, ¶ 111.

SSP's contention that that Illinois law does not allow G&G to maintain both a breach of contract claim and a fraudulent inducement claim is false. In Illinois, the " 'existence of a remedy in breach of contract does not bar a party from seeking recovery for fraud in the inducement.' " *Cobra Capital LLC v. Stover Indus., Inc.*, 2007 WL 844635, at *5 (N.D. Ill. Mar. 14, 2007), *quoting Concord Indus., Inc. v. Harvel Indus. Corp.*, 122 Ill.App.3d 845, 850, 462 N.E.2d 1252, 1255 (1984). To bring a fraud claim, G&G must allege a "fraudulent act distinct from the alleged breach of contract." *Five-Star AudioVisual, Inc. v. Unique Bus. Sys. Corp.*, 769 F.Supp.3d 840, 852 (N.D. Ill. 2025). Here, G&G's fraudulent inducement is distinct from its breach of contract claim, as it relies on fraudulent statements not included as contractual terms in the Licensing Agreement, such as SSP's statement about its long-term business relationship.

G&G's fraudulent inducement claim is substantively different than its breach of contract claim, and therefore a separate and unique claim.

Lastly, durational representations or promises about the long-term business relationship can constitute a false statement. When a complaint alleges fraud regarding future promises, it survives a motion to dismiss if it also alleges a scheme to defraud. *Zic v. Italian Gov't Travel Off.*, 130 F.Supp.2d 991, 995 (N.D. Ill. 2001) (concluding that fraudulent misrepresentation and fraudulent inducement are similar); *Das v. Tata Consultancy Servs. Ltd.*, 118 F.4th 903, 911 (7th Cir. 2024). This "elaborate artifice of fraud" must encompass a "large[] pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Das*, 118 F.4th at 911. Here, G&G expressly alleged that SSP employed a large scheme of fraud regarding all its false promises. Compl., ¶ 107. G&G also alleged a large pattern of deceptions and enticements made by SSP which included statements that SSP wanted to form a long-term business relationship, that it would pay the Upfront Fee, and that it would pay Licensing Fees. *Id.*, ¶¶ 16, 26, 43, 48, 98-99, 103-04. Simply put, G&G properly alleged its fraudulent inducement claim.

## V. COUNT V – FRAUD BY OMISSION – STATES A COGNIZABLE CAUSE OF ACTION

G&G also sufficiently alleged its fraud by omission claim, who's elements are: "(1) concealment of a material fact, (2) with the intent to deceive, and (3) that the plaintiff was unaware of the concealed fact and would have acted differently had the plaintiff known of it." *Bors v. Duberstein*, 2004 WL 1588271, at *4 (N.D. Ill. July 15, 2004). Here, G&G expressly alleged that SSP concealed several statements of fact, including that it was only looking to partner with G&G short-term for the sole purpose of getting the airport concession at Midway, that it never intended to pay the full Upfront Fee and Licensing Fees, and that it intended to

continue operating Gene's Bistro more than 90 days after the Termination Notice. Compl. ¶¶ 15, 113. The foregoing omissions were made by SSP with the intent to deceive G&G so that, among others, it would enter into the Licensing Agreement and allow SSP to operate Gene's Bistro without paying all the fees. *Id.*, ¶ 114. G&G did not know those concealed facts and would have acted differently had it known about those. *Id.*, ¶ 115-16.

G&G satisfied the requirements under Rule 9(b) in its fraudulent omission claim. To start, the "standard to state a fraudulent omission claim under Rule 9(b) is more relaxed than the typical fraud claim." *Fed. Deposit Ins. Corp. v. Patel*, 2020 WL 6681348, at *2 (N.D. Ill. Nov. 12, 2020). Further, as shown above, G&G sufficiently alleged the "who, what, where, and when" of the alleged fraud. G&G described what SSP affirmatively stated and, by implication, also necessarily includes the statements that SSP *did not make, e.g.*, that it was looking to partner with G&G short-term, that it never intended to pay the full Upfront Fee and Licensing Fees, and that it intended to continue operating Gene's Bistro for more than 90 days. Compl., ¶ 113. That is enough to survive a FRCP 12(b)(6) motion. *See, e.g.*, *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2014 WL 7365872, at *7 (N.D. Ill. Dec. 23, 2014) ("[P]laintiffs have also sufficiently pled fraud by omission. They allege that defendants failed to disclose the risks of stroke, pulmonary embolism, and cardiovascular events and that they knew or should have known about these side effects."). Therefore, G&G sufficiently alleged its fraud by omission claim.

## VI. COUNT VI – CONVERSION – STATES A COGNIZABLE CAUSE OF ACTION

G&G sufficiently alleged a conversion claim, which requires: (1) defendant's unauthorized and wrongful assumption of control over plaintiff's property; (2) plaintiff's right to the property; (3) plaintiff's right to immediate possession; and (4) plaintiff's demand for possession. *Wendorf*

*v. Landers*, 755 F.Supp.2d 972, 980 (N.D. Ill. 2010). Here G&G alleged that SSP was required to pay all fees under the agreement after January 23, 2021. Compl., ¶ 53, 74, 78, 84(b), 90, 96, 104, 113, 118-19, Ex. C. After that date, G&G had a right to that property and a right to immediate possession. *Id.* ¶ 121. G&G further alleged that SSP has not paid all licensing fees. *Id.* ¶ 118. Even though G&G has repeatedly demanded possession of its funds, SSP continues to assume control of Plaintiff's monetary property. *Id.* ¶ 122. All the elements for conversion were alleged.

A conversion claim is allowed when money is at issue and requires that funds be capable of being described, identified, or segregated in a specific manner. *Wendorf*, 755 F.Supp.2d at 981. In Illinois, it is sufficient that the money be adequately identified by description or as a specific fund. *See Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 451 F.Supp.3d 910, 917 (S.D. Ill. 2020); *Wei Quan v. Arcotech Uniexpat, Inc.*, 2018 IL App (1st) 180227, ¶ 16, 122 N.E.3d 767, 773 (concluding that the student sufficiently alleged a conversion in which, pursuant to a written service agreement, defendant failed to return a refund of $6,250 to the student). Here, G&G alleged that all the fees SSP owes are capable of being described and identified in a specific manner. Compl., ¶ 119. Specifically, pursuant to the Licensing Agreement, the Upfront Fee was $50,000.00, and the Licensing Fees were to be five percent of "Net Revenues" generated at Gene's Bistro. *Id.* ¶ 26-27, 119. As in *Wei Quan*, it "is undoubtedly the case" that the money at issue in this case is sufficiently described.

## VII. COUNTS VII – VIOLATION OF THE DEFEND TRADE SECRETS ACT, VIII – VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, AND IX AND X – VIOLATION OF THE LANHAM ACT– STATE COGNIZABLE CAUSES OF ACTION

G&G's intellectual property and false advertising claims are viable independent of whether the Licensing Agreement was formally terminated. SSP's continued use of G&G's brand, trademarks, and intellectual property while simultaneously pursuing an alternative

business arrangement and having issued a Notice of Termination constitutes unauthorized or at minimum improper use of G&G's intellectual property. Even within the term of the Licensing Agreement, SSP's use of G&G's brand in a manner inconsistent with the quality standards and operational requirements of the Licensing Agreement constitutes a breach of the license that renders the use unauthorized. Furthermore, if SSP's position is that the Licensing Agreement remains in full force and effect because the restaurant never closed, then SSP must also comply with all the Licensing Agreement's requirements regarding the use of G&G's intellectual property – including quality standards, menu requirements, and operational standards – and any failure to do so constitutes both a breach of contract and unauthorized use of the licensed intellectual property. At this stage, and considering SSP's alleged breaches, this Court should decline to resolve contested questions about the parties' rights under the License Agreement. *Wine & Canvas Dev. LLC v. Weisser*, 2013 WL 5965884, at *3 (S.D. Ind. Sept. 11, 2013), report and recommendation adopted as modified, 2013 WL 5963369 (S.D. Ind. Nov. 7, 2013).[7]

## VIII. COUNT XI – SPECIFIC PERFORMANCE – STATES A COGNIZABLE CAUSE OF ACTION

While specific performance is technically a remedy rather than an independent cause of action, courts routinely allow parties to plead remedies as separate counts at the pleading stage, particularly where the nature of the remedy sought – compelling continued performance of a unique licensing relationship involving a distinctive brand—is distinct from money damages and requires separate judicial consideration. G&G's specific performance claim is not merely duplicative of Count I because it seeks a distinct form of relief: compelling SSP to continue performing under the Licensing Agreement rather than simply paying damages for past breaches.

[7] Additionally, as mentioned at the July 29, 2026, status conference, after this suit was filed, SSP removed the Gene's Bistro logo from its menu. This can support claims under the Lanham Act. 15 U.S.C. § 1501, *et seq*.

Given that the Gene & Georgetti brand is unique and that monetary damages may be difficult to calculate or insufficient to compensate G&G for the loss of the licensing relationship, specific performance is an appropriate remedy to plead at this stage. The Court should at minimum allow G&G to preserve this remedy through the pleading stage rather than dismissing it before any factual development.

## CONCLUSION

Because violations of FRCP 8 and 9(b) are pleading violations – not merits deficiencies – this Court ordinarily should give Plaintiff leave to amend absent bad faith, prejudicial delay, or futility. *See, Gandhi v. Sitara Capital Management, LLC,* 721 F.3d 865, 870 (7th Cir. 2013) (denial of leave to amend proper where plaintiff already had three chances and proposed fourth complaint would have been futile).

**WHEREFORE**, G&G respectfully requests that the Court issue an order granting G&G the following relief:

A. Denying SSP's Moton to Dismiss;

B. Alternatively, allowing G&G to replead its complaint; and

C. Granting G&G such other and further relief that the Court deems just and proper.

Dated: September 9, 2026

Respectfully submitted:
**G&G MIDWAY, LLC**

By: /s/ Ronald D. Menna, Jr.
One of Its Attorneys

Ronald D. Menna, Jr. Menna@rathjelaw.com
Gilberto Gonzalez GGonzalez@rathjelaw.com
**RATHJE WOODWARD LLC**
Suite 220, 300 E. Roosevelt Road
Wheaton, IL 60187
630-668-8500
*Attorneys for Plaintiff*